IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONNA IANNONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-710 |
| ) | |
| J.C. PENNEY COMPANY, ) | Judge Lancaster |
| J.C. PENNEY CORPORATION tdba ) | Magistrate Judge Hay |
| J.C. PENNEY, FURNITURE BRANDS ) | |
| INTERNATIONAL, INC., LANE ) | |
| FURNITURE INDUSTRIES, INC., ) | |
| ACTION INDUSTRIES, INC., ) | |
| ) | |
| Defendants. ) | |

REPORT AND RECOMMENDATION

I.      RECOMMENDATION

It is respectfully recommended that Defendants' Joint Motion for Preclusion of Expert Testimony be denied and Defendants' Motion for Summary Judgment (Dkt. No. 17) be granted.

II.     REPORT

Plaintiff, Donna Iannone ("Iannone"), commenced this action against defendants J.C. Penney Company, J.C. Penney Corporation, t/d/b/a J.C. Penney (together "J.C. Penney"), Furniture Brands International, Inc., Lane Furniture Industries, Inc. and Action Industries (together, "Lane"), alleging that the reclining mechanism on a chair she purchased from J.C. Penney, and which was allegedly manufactured and distributed by Lane, failed causing her right hand to get stuck and preventing the recliner from fully retracting to an upright position.  As such, plaintiff had difficulty extracting herself from the chair and, as she attempted to do so, allegedly suffered further injury to her right arm, right shoulder, low back and left leg.

Plaintiff filed a complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, on May 11, 2005, bringing claims against J.C. Penney and Lane for negligence (Counts I and IV, respectively), strict liability (Counts II and V, respectively), and breach of warranty (Counts III and VI, respectively). On May 23, 2005, J.C. Penney removed the case to this Court based on diversity of the parties.[1] Defendants have filed a joint motion in which they initially asked the Court to preclude any expert reports and/or expert opinions that plaintiff may submit on the issue of causation because discovery is closed and that, as of the date their motion was filed, plaintiff had failed to identify an expert or submit a report. Defendants then argued that because plaintiff cannot prove that the chair in question was defective or in a dangerous condition or that defendants' conduct was the legal cause of her injuries without expert testimony, they are entitled to summary judgment.

Indeed, on March 16, 2006, the Court issued an Amended Case Management Order directing that, "[t]he parties shall complete discovery (factual **and** expert) by **July 29, 2006**," and that dispositive motions were to be filed on or before August 28, 2006. Dkt. No. 15 (emphasis in original). Although the Court subsequently extended the date for filing dispositive motions until September 28, 2006, the date that discovery was to close remained unchanged. See Dkt. No. 16. This notwithstanding, it apparently came as a surprise to plaintiff when, on September 28, 2006, defendants filed a timely motion for summary judgment asking that

---

[1]According to the Complaint, plaintiff resides in Allison Park, Pennsylvania, J.C. Penney Company and J.C. Penney Corporation are corporations with their principal place of business in Plano, Texas, Furniture Brands International, Inc. is a corporation with its principal place of business in St. Louis, Missouri, and Lane Furniture Industries, Inc. and Action Industries, Inc. are corporations with their principal place of business in Tupelo, Mississippi (Complaint ¶¶ 1, 2). As well, defendants have represented, and plaintiff does not dispute, that given plaintiff's claims that she has suffered permanent injuries and pain and suffering and that these injuries will result in additional expenses for treatment, the amount in controversy exceeds $75,000.00, thereby bestowing diversity jurisdiction upon the Court. Notice of Removal ¶¶ 7, 8.

judgment be entered in their favor because, as of that date, plaintiff had not identified an expert or submitted any expert evidence to support a finding that the chair in question was defective or in a dangerous condition or that the accident of which she complained caused her alleged injuries.  Apparently not realizing that summary judgment is the stage of the proceedings where the parties are required to set forth their evidence so that the Court may make a determination as to whether a triable issue remains for the fact finder, plaintiff, by and through her counsel, filed a motion on October 4, 2006, seeking clarification of the Court's March 16, 2006 Order, arguing that she anticipated that the Court would issue another order, apparently sometime after motions for summary judgment were submitted, setting forth the specific dates that she should disclose her experts and their reports and asking the Court for time within which to do just that.  Dkt. No. 21.  On October 16, 2006, noting that the Court's previous order regarding the timing of expert discovery was clear, the Court nevertheless granted plaintiff a limited time – one week – within which to produce expert reports concerning liability and causation.  Dkt. No. 26.  Plaintiff submitted those reports within the week and was then given another two weeks – or until November 9, 2006 – to respond to defendants' motion.  Dkt. No. 27.

Thus, while defendants are rightfully annoyed and correct when they argue that plaintiff's expert reports were not provided to them until two months after discovery closed and after their motion for summary judgment was filed, plaintiff was nevertheless granted the additional time within which to do so by the Court.  As such, to the extent that defendants seek judgment in their favor because of the absence of any expert evidence or to preclude plaintiff from submitting any expert evidence at trial as having been submitted out of time, the motion is properly denied.

Indeed, conceding in her response to defendants' motion that expert testimony is required to prove her case, plaintiff has submitted expert reports from David J. Bizzak, Ph.D., P.E., on the issue of liability and Drs. Joseph C. Maroon and Glenn A. Buterbaugh on the issue of causation. Plaintiff argues that these reports are sufficient to demonstrate that the chair in question was defective as the result of a design or manufacturing defect, that defendants failed to warn plaintiff of the need to periodically inspect the chair or what action to take if it malfunctioned, and that plaintiff's injuries were caused when the chair malfunctioned.

This notwithstanding, defendants have filed a reply brief in which they submit that their position has not changed as the expert opinions submitted by Dr. Bizzak and Dr. Maroon lack the requisite degree of certainty required of an expert under Pennsylvania law and that plaintiff has nevertheless misidentified the allegedly defective product at issue in this case. As such, defendants argue that plaintiff is still unable to prove her case and they are therefore entitled to summary judgment.

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* ... or the factual record will be

taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

   To support their latter argument, defendants have submitted the affidavit of Michael Smith, a Quality Control Manager at Lane Furniture Industries, Inc., in which he states that although plaintiff has alleged in her complaint that the chair involved in the incident was a "Lane *Comfort King* Recliner," Lane's records do not indicate that plaintiff ever had a "Lane *Comfort King* Recliner." See Dkt. No. 31-2. Mr. Smith also attests to the fact that the serial number of the chair as provided by plaintiff's counsel in a letter dated October 14, 2004, which predates this litigation by almost seven months, is not that of a "Lane *Comfort King* Recliner," that no serial number provided by plaintiff corresponds to a "Lane *Comfort King* Recliner," and that the chair that Mr. Smith examined in plaintiff's garage, which purports to be the chair involved in the incident and the same chair referred to by Dr. Bizzak in his report, is not a "Lane *Comfort King* Recliner." Id. Defendants therefore conclude that because the chair in which plaintiff was allegedly sitting when the incident occurred was not a "Lane *Comfort King* Recliner" as she has alleged, she has failed to identify the defective product which, is fatal to her claims.

In so arguing, defendants cite to three cases, all of which are distinguishable from the instant case. In Klein v. Council of Chemical Associations, 587 F. Supp. 213 (E.D. Pa. 1984), for instance, the plaintiff and his wife brought suit against eleven manufacturers and suppliers of chemical products, amongst others, after the plaintiff contracted bladder cancer allegedly caused by being exposed to certain chemicals commonly used in the printing industry in which he had worked for over fifty years. The plaintiff, however, conceded that he was unable to identify any specific product to which he was exposed or the manufacturer of such a product. Rather, as found by the Court, the "Plaintiffs in effect seek to put the entire industry on trial from the conviction that if Klein had been injured, it must be their fault." Id. at 221. Finding that liability is strictly imposed for physical harm caused to the user of a product only on one who has sold it in a defective condition, the Court concluded that the plaintiffs "must at least designate the product alleged to be defective in order to recover from one who sells it," and that their failure to do so was fatal to their claims. Id. at 222-23.

Similarly, in Eckenrod v. GAF Corp., 375 Pa. Super. 187, 544 A.2d 50, allocatur denied, 520 Pa. 605, 553 A.2d 968 (1988), upon which defendants also rely, the plaintiff brought suit against, inter alia, several companies which supplied asbestos gloves and asbestos cloth to the company where plaintiff's decedent, who had died of lung cancer, worked for over twenty years. Although it was not disputed that plaintiff's decedent was exposed to asbestos products during the course of his employment, the record was devoid of any testimony that would establish that he worked with or was exposed to the asbestos supplied by the defendants. Because there was no evidence that the plaintiff's decedent "came into contact with an identifiable product" the Court found that summary judgment was properly granted. Id., 375 Pa. Super. at 192-193, 544 A.2d at 53. See also Catasauqua Area School District v. Eagle-Picher

Industries, Inc., 118 F.R.D. 566 (E.D. Pa. 1988) (Finding that summary judgment was properly granted as the plaintiff failed to present evidence that the defendants had manufactured any of the asbestos containing products used in the construction or renovation of the plaintiff-school district's buildings.)

    Thus, in the cases cited by defendants, the plaintiffs were unable to identify the specific product that allegedly caused the harm or the product manufacturer so as to warrant recovery from the named defendants.  Here, however, although plaintiff may have misstated the style name of the chair in which she was sitting when her injuries allegedly occurred, there is no dispute that she has identified the chair now maintained in her garage as the allegedly defective product which caused her injuries and that the chair in her garage was manufactured by Action Industries.  Nor do defendants dispute that the serial number on the label attached to the chair, Serial No. 9017381, identifies a chair manufactured by Action Industries or that they were provided with that information during the course of this litigation.  Indeed, in answer to Plaintiff's First Set of Interrogatories, J.C. Penney indicated that the chair identified by plaintiff as the chair in question carried serial No. 9017381, was engineered by "Lane Furniture/Action Industries," and purchased on or about February 9, 2001.  See Dkt. No. 36-11, p. 2.  Moreover, it is undisputed that Action Industries and Lane Furniture Industries, Inc. are wholly owned subsidiaries of Furniture Brands International.  See Dkt. Nos. 36-4, 36-5.  Thus, unlike in the cases relied upon by defendants, plaintiff has not only identified the product at issue and has provided evidence that it was manufactured and distributed by defendants but has made the actual product available to defendants for inspection.  Under these circumstances, the fact that plaintiff has misstated the name of the particular Action Industries recliner she was sitting in

when her injuries allegedly occurred does not, at this juncture, entitle defendants to summary judgment.[2]

As such, the only remaining question before the Court is whether the expert opinions submitted by Drs. Bizzak and Maroon satisfy the requisite standard under Pennsylvania law and, thus, are sufficient to allow plaintiff to survive summary judgment.[3]

It is undisputed that plaintiff's claim for strict liability is governed by section 402A of the Restatement (Second) of Torts, which imposes liability on anyone who "sells any product in a defective condition unreasonably dangerous to the user." Restatement (Second) of Torts, § 402A. See Moyer v. United Dominion Industries, Inc., 473 F.3d 532, 538 (3d Cir. 2007); Ettinger v. Triangle-Pacific Corp., 799 A.2d 95, 101-102 (Pa. Super. 2002), allocatur denied, 572 Pa. 742, 815 A.2d 1042 (2003). See also Webb v. Zern, 422 Pa. 424, 427, 220 A.2d 853, 854 (1966) (Adopting section 402A as the law of the Commonwealth). As such, in order to succeed on her strict liability claim, plaintiff must prove that: (1) that the product was defective; (2) the defect existed at the time the product left the hands of the seller or manufacturer and (3) the defect caused physical harm to the ultimate user or consumer. Soufflas v. Zimmer, Inc., 474 F. Supp. 2d 737, 749 (E.D. Pa. 2007); Ettinger v. Triangle-Pacific Corp., 799 A.2d at 102.[4] Pennsylvania recognizes three types of defects for which a defendant may be held strictly liable: (1) design defect; (2) manufacturing defect; and (3) failure to warn. Soufflas

---

[2]Indeed, it appears that defendants have known since October 31, 2005, when they inspected the Action Industries recliner in plaintiff's garage that the chair was not a "Lane *Comfort King* Recliner" yet chose not to raise the issue until now. See Smith Aff. ¶ 8.

[3]The parties do not dispute that Pennsylvania law governs here.

[4]Because plaintiff's negligence and breach of warranty claims are premised on defendants' alleged duty and warranty not to manufacture and sell defective products, the existence of a defect must be established to succeed on those claims as well.

8

v. Zimmer, Inc., 474 F. Supp. 2d at 748, citing Phillips v. A-Best Prods. Co., 542 Pa. 124, 131, 665 A.2d 1167, 1170 (1995); Parkinson v. Guidant Corp., 315 F. Supp. 2d 741, 746 (W.D. Pa. 2004). Here, plaintiff has alleged that the chair in question is defective because of a failure to warn of its dangerous propensities and because of a manufacturing defect.[5]

As well, defendants have argued, and plaintiff has conceded, that the chair at issue has various mechanical systems that are not within the ordinary knowledge or training of a layperson and that expert testimony is needed to establish her cause of action. More specifically, the parties agree that the special knowledge and skill of an expert is required in this case to establish not only the defect itself but that it caused plaintiff's alleged injuries. See A.G. Cullen Construction, Inc. v. State System of Higher Education, 898 A.2d 1145, 1172 (Pa. Cmwlth. 2006) (Under Pennsylvania law, "where the subject matter involves special skill and training beyond the knowledge of a layman" expert testimony is required.); Kozak v. Struth, 515 Pa. 554, 558, 531 A.2d 420, 422 (1987). Expert testimony, however, cannot be based on mere conjecture. Childers v. Power Line Equipment Rentals, Inc., 452 Pa. Super. 94, 110, 681 A.2d 201, 209-10 (Pa. Super. 1996), allocatur denied, 547 Pa. 735, 690 A.2d 236 (1997), quoting Collins v. Hand, 431 Pa. 378, 390, 246 A.2d 398, 404 (1968). Rather, under Pennsylvania law,

> "[w]hen a party must prove causation through expert testimony, the expert must testify with 'reasonable certainty' that 'in his professional opinion,' the result in question did come from the cause alleged." *Cohen v. Albert Einstein Medical Center*, 405 Pa. Super. 392, 592 A.2d 720, 723 (1991) (citations omitted). "An expert fails this standard of certainty if he testifies that the alleged cause 'possibly,' or 'could have' led to the result, that it 'could

---

[5]Although plaintiff has indicated in her brief that she has demonstrated that the chair was defective as the result of a manufacturing defect *or a design defect*, the complaint contains no averment which would suggest that plaintiff is proceeding under a defective design theory. See Complaint, generally. Moreover, plaintiff has alleged only that the Lane defendants were in the business of manufacturing and selling household furniture. See Complaint ¶ 21.

> very properly account' for the result, or even that it was 'very
> highly probable' that it caused the result." *Kravinsky v. Glover*, 263
> Pa. Super. 8, 396 A.2d 1349, 1356 (1979) (citations omitted).
> "This issue is not merely one of semantics. There is a logical
> reason for the rule. The opinion of an expert is evidence. If the fact
> finder chooses to believe it, he can find as fact what the expert
> gave as an opinion." *Cohen*, 592 A.2d at 723 (citation omitted).
> "[I]t is the intent of our law that if ... the expert cannot form an
> opinion with sufficient certainty so as to make a [professional]
> judgment, there is nothing on the record with which a jury can
> make a decision with sufficient certainty so as to make a legal
> judgment." *McMahon v. Young*, 442 Pa. 484, 276 A.2d 534, 535
> (1971).

Id.

Here, plaintiff has submitted a report from David J. Bizzak, Ph.D., a professional mechanical engineer, who, after examining the recliner at issue and discussing the incident with plaintiff, formulated what he has categorized as "certain preliminary opinions." See Dkt. No. 28-4, pp. 1, 3. Specifically, Dr. Bizzak found that two bolts, which connected the crank link to the torque tube in the reclining mechanism, were broken near the head of the bolts and that the failure of this connection would result in the collapse of the side of the chair and prevent full retraction of the leg rest as plaintiff described occurred on the day of the accident. Id., p. 2. Dr. Bizzak further found that there was clear evidence of relative movement between the crank link and the torque tube and that it appeared that one bolt failed first placing an increased load on the second bolt. Id. Although Dr. Bizzak could not say what caused the bolts to fail, stating that a metallurgical analysis would be necessary to determine the proximate cause of their failure, he did state that it was "reasonable to expect that failure of the bolts due to fatigue, under expected loading conditions, will not occur during the service life of the chair," and opined that "a failure of a bolted connection would be a clear indication of either a design defect (i.e., an improper

design for anticipated loading) or a manufacturing defect (e.g., improper assembly or material defect)." Id., p. 3.  Dr. Bizzak then concluded that:

> Based upon my review of available evidence, it is my opinion that the March 11, 2003 accident in which Ms. Iannone was injured occurred as a direct result of a failure of the recliner mechanism of the subject Action Lane recliner.  Furthermore, it is my preliminary opinion that the subject recliner mechanism failure was the result of a defect in the design or manufacture of the chair.  I would anticipate an opportunity to review deposition testimony, discovery materials, as well as to conduct appropriate metallurgical analyses of the failed bolt.  Based upon my anticipated review of these materials, I reserve the right to alter or modify my opinion.

Id., p. 3.

Defendants contend that they are entitled to summary judgment because Dr. Bizzak's opinion does not rise to the level of certainty required under Pennsylvania law as evidenced by the fact that, by Dr. Bizzak's own admission, it is only a preliminary opinion and that he reserves the right to alter or modify his opinion after his anticipated review of additional materials.  Moreover, defendants argue, Dr. Bizzak was inconclusive as to whether there was a design defect or a manufacturing defect and does not expressly state that his opinion was within a reasonable degree of professional certainty.

Plaintiff has not addressed defendants' arguments in this regard but rather argues only that Dr. Bizzak's report comports with Rule 702 of the Federal Rules of Evidence and, thus, concludes that it is admissible.  Whether or not an expert's opinion is admissible under the rules of evidence, however, does not answer the question of whether, once admitted, it is sufficient to sustain plaintiff's burden of proof under Pennsylvania law.  As opined by the Court of Appeals for the Third Circuit, "Pennsylvania's rule is more than a requirement of admissibility, but rather is an element of plaintiff's burden of proof.... Thus, even if admissible, testimony with less than a reasonable degree of medical certainty was insufficient to prove causation."  In re Paoli R.R.

11

Yard PCB Litigation, 35 F.3d 717, 751-752 (3d Cir. 1994), cert. denied, 513 U.S. 1190 (1995). Indeed, the Court in Paoli went on to state that the defendants in that case were "correct that under Pennsylvania law they are entitled to summary judgment where [the expert] refused to state her conclusions with a reasonable degree of medical certainty or its substantive equivalent." Id. at 765.  Thus, even if, as plaintiff has argued, Dr. Bizzak's opinion is properly admitted under the rules of evidence, he must nevertheless be certain about his conclusions before a jury will be permitted to rely on them in making their determination.  Id.  See Childers v. Power Line Equipment Rentals, Inc., 452 Pa. Super. at 110, 681 A.2d at 209-10.

        Here, it does not appear that Dr. Bizzak's opinion is stated with the degree of certainty required under Pennsylvania law so as to create a genuine issue of fact for trial.[6]  Not only has Dr. Bizzak himself categorized his opinion as merely preliminary and based only on the evidence available to him at the time, but he reserved the right to alter or modify his opinion in anticipation of having the opportunity to review other evidence, i.e., deposition testimony and discovery materials, and to conduct a metallurgical analyses of the failed bolts.  Indeed, without having conducted the metallurgical analyses, Dr. Bizzak acknowledges that he is unable to determine why the bolts failed.  Nor is he able to determine whether the malfunction, and therefore the accident, was caused by "an improper design for anticipated loading," or "improper assembly" or a "material defect."  In short, Dr. Bizzak cannot conclusively identify a defect and his opinion speaks only to possible causes which, under Pennsylvania law, is insufficient to permit the trier of fact to determine that the product was defective or that the defect caused the

---

[6]We note here that while an expert need not expressly state that his opinion was made with a reasonable degree of professional certainty, it must be "amenable to extrapolation from the expert's report."  Watkins v. Hospital of the University of Pennsylvania, Penn Health Systems, 737 A.2d 263, 267 (Pa. Super. 1999).  See Paoli, 35 F.3d at 750.

accident. Childers v. Power Line Equipment Rentals, Inc., 452 Pa. Super. at 110-11, 681 A.2d at 210 (Finding that expert testimony which was based on the possibility that one of several explanations may account for the alleged malfunction was properly excluded as not being given with the a reasonable degree of professional certainty.)  Moreover, Dr. Bizzak has not stated with any specificity what is improper about the design or the assembly that would cause the bolts to fail suggesting that perhaps there are other possible explanations. See Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 93, 337 A.2d 893, 898 (1975) (A "plaintiff must prove that the defect causing the injury existed at the time the product left the seller's hands; the seller is not liable if a safe product is made unsafe by subsequent changes.")  As such, plaintiff is unable to prove her case through Dr. Bizzak's opinion and defendants are therefore entitled to summary judgment.[7]

       For these reasons, it is recommended that Defendants' Joint Motion for Preclusion of Expert Testimony be denied and Defendants' Motion for Summary Judgment (Dkt. No. 17) be granted.

       Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

       Respectfully submitted,

       /s/   Amy Reynolds Hay
       United States Magistrate Judge

---

[7]Having found that plaintiff is unable to point to evidence which conclusively identifies a defect in the chair or that supports a finding that the defect caused the accident in the first instance, we have not addressed defendants' argument that plaintiff's expert medical opinions are also insufficient under Pennsylvania law to establish the cause of her injuries.

Dated: 24 April, 2007

cc:     Hon. Gary L. Lancaster
        United States District Judge

        All counsel of record by Notice of Electronic Filing